66 F.3d 315
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-1713.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 11, 1994.
Decided: Sept. 18, 1995.
 
 ARGUED: Alanson Trigg Chenault, IV, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA, for appellant. Keith Bernard Letourneau, Trial Attorney, Civil Division, United States Department of Justice, Washington, DC, for Appellee.
 ON BRIEF: Antonio J. Rodriguez, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA; Thomas W. Pettit, Vinson, Meek, Pettit & Colburn, L.C., Huntington, WV, for appellant. Frank W. Hunger, Assistant Attorney General, Rebecca A. Betts, United States Attorney, David V. Hutchinson, Assistant Director, Admiralty Section, Civil Division, United States Department of Justice, Washington, DC, for appellee.
 Before RUSSELL and WIDENER, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The appellant, Fireman's Fund Insurance Company, sued the United States in admiralty for damages caused by the grounding of the tug Buckeye State on a submerged lock wall of Old Lock and Dam 18 built by the United States on the Ohio River. The district court found that although the United States had breached a statutory duty under 14 U.S.C. Sec. 86 to properly mark abandoned navigational obstructions,[1] the negligence of the pilot of the ship, Mr. Buttery, was the sole proximate cause of the grounding. The district court therefore entered judgment for the United States, and we affirm.
 
 
 2
 The ship, piloted by Buttery and pushing a flotilla of five empty barges, was moving downstream on the Ohio River on the morning of February 5, 1986 when Buttery began a U-turn in order to return the flotilla to a mooring upriver. The Buckeye State began the maneuver approximately 1 1/4 to 1 1/2 miles upriver of the submerged lock wall, which runs parallel to the Ohio bank of the river approximately 100 feet from the Ohio shoreline. The lock wall was built by the United States but was unused and had been abandoned, apparently having been lowered so that it was below normal pool. Originally, the lock wall had been marked with buoys at its upstream and downstream ends by the Coast Guard, but the upstream buoy had been moved by the Coast Guard to a point approximately 300 feet downstream of the upstream end of the lock wall.
 
 
 3
 The record supports the finding of the district court that Buttery relied on the buoys when they came into his radar range, approximately one mile from the lock wall, to determine how much room remained available to make his U-turn. He also relied on a chart of this area of the Ohio River which clearly showed that the upstream buoy was 350 feet downstream of the upstream end of the lock wall. To attempt this maneuver, Buttery intentionally brought the ship close to the Ohio bank of the river to make use of the width of the river. In so doing, he brought the ship within 200-300 feet of the upstream buoy marking the lock wall, and there the ship struck the lock wall and sank.
 
 
 4
 Fireman's Fund, subrogated as insurer to the vessel, sued the United States, claiming that the M/V Buckeye State relied on the position of the buoy in determining the upstream extremity of the lock wall, and that as a result of the Coast Guard's improper placement of the buoy, the ship struck the lock wall. The district court found that the United States, as owner of the obstruction, had violated the statute by its placement of the buoy at the upstream end of the lock wall,[2] but that Buttery's negligence was the sole proximate cause of the grounding. The district court therefore denied the requested relief, as well as a motion for new trial or amendment of judgment. Fireman's Fund appeals.
 
 
 5
 There are several interesting issues discussed in the briefs, but because we find that the district court correctly concluded that the Coast Guard's placement of the upstream buoy marking the lock wall did not in any way contribute to the grounding, and that this conclusion is dispositive of Fireman's Fund's appeal, we do not decide any other issues.
 
 
 6
 The district court found that the Coast Guard's marking of the upstream end of the lock wall could not have contributed to the grounding because Buttery relied on the chart, which clearly showed the location of the upstream buoy and the upstream end of the wall. Moreover, the district court found that Buttery was not in full control of the tow, which was moving downriver in a current of seven to nine miles per hour. It found that Buttery executed the turning maneuver which was hazardous, or at least highly risky, without exercising due care as to the existing conditions. Therefore, the district court found that Buttery did not rely on a belief that the buoy marked the upstream end of the lock wall,[3] and that even if he had relied on such a belief he could not have avoided the wall under all the circumstances. These factual findings are reviewed only for clear error, Hellenic Lines, Ltd. v. Prudential Lines, Inc., 730 F.2d 159 (4th Cir.1984), and we are of opinion that there was no such error. We have no misgivings in holding that a mariner who actually relies upon a chart identifying an obstruction and the correctly charted location of a buoy marking that obstruction, is charged with such knowledge. See, e.g., The Gildersleeve, 68 F.2d 845, 847 (2d Cir.), cert. denied, 292 U.S. 654 (1934); McMilin v. United States, 290 F.Supp. 351, 355 (D.Del.1968).
 
 
 7
 The parties dispute whether and to what extent presumptions of fault should have been applied by the district court. However, a presumption of fault is relevant only to the extent that causation can be shown. Because the district court correctly concluded that Buttery's negligence was "the sole proximate cause" of the grounding, the district court's failure to apply a rule of presumption of fault against the United States, whether erroneous or not, is immaterial.
 
 
 8
 Fireman's Fund's other assignments of error have been considered. But, as the district court stated, the ultimate issue in this case is whether the United States in any way contributed to the grounding. Because the district court properly answered this question in the negative, we need not address them, and the judgment of the district court is
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 There is some considerable doubt if the United States was negligent in placing the buoy in question here. For the purpose of argument we will assume that it was
 
 
 [2]
 See n. 1, supra
 
 
 [3]
 Fireman's Fund emphasizes cases holding that mariners are entitled to rely upon a belief that the Coast Guard's placement of buoys is proper, including our holding in Somerset Seafood Co. v. United States, 193 F.2d 631, 635-38 (4th Cir.1951). Because the district court correctly found that Buttery did not in fact rely on a belief that the placement of the upstream buoy was proper, it is immaterial whether such reliance would have been proper, and Somerset Seafood is inapplicable